**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE, | |
| Plaintiff, | |
| v. | Civil Action No. __ CV____ (___) |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, | |
| Defendant. | |

## COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff COMPETITIVE ENTERPRISE INSTITUTE ("CEI") for its complaint against

Defendant NATIONAL AERONAUTICS AND SPACE ADMINISTRATION ("NASA")

alleges on knowledge as to Plaintiff, and on information and belief as to all other matters, as

follows:

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, to compel production of certain NASA records relating to global warming.  In FOIA

requests issued in August 2007 and January 2008, CEI sought documents concerning the

integrity of NASA's temperature record and the conduct of NASA scientists engaged in climate

research.  For nearly three years, NASA has refused to comply with these requests, obstructing

the FOIA process.  The public needs transparency from its government about climate science,

particularly now, when debate about climate change and "cap and trade" legislation has captured

sustained national attention.  Yet NASA has repeatedly and unlawfully refused to produce the

requested materials.  NASA is accountable to the taxpayers and to the public.  It should not be free to treat its FOIA obligations with contempt.  Plaintiff has exhausted its administrative remedies and has no recourse but this lawsuit.

## PARTIES

2.      Plaintiff CEI is a Washington, D.C.-based think tank dedicated to free enterprise and limited government.  *The Wall Street Journal* has called CEI "[t]he best environmental think tank in the country."  CEI has been extensively involved in the national debate over climate policy.

3.      Defendant NASA is a federal agency whose mission, according to its website, is to pioneer the future in space exploration, scientific discovery, and aeronautics research. NASA's Goddard Institute of Space Studies ("GISS") is a division of NASA based in New York City and holds itself out as a "leading center of atmospheric modeling and of climate change."

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this action is brought in the District of Columbia and 28 U.S.C. § 1331 because the resolution of disputes under FOIA presents a federal question.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant NASA's principal place of business is in the District of Columbia.

## FACTUAL BACKGROUND

6.      This lawsuit seeks to compel NASA to respond fully and completely to three FOIA requests dated August 24, 2007; August 27, 2007; and January 28, 2008.  The first two requests seek information relating to corrections to NASA's temperature record and about

NASA's response to FOIA requests.  The third request seeks information about work undertaken by NASA scientists, at taxpayer expense, relating to a website called Real Climate.org.

7.     NASA has asserted a series of conflicting, contradictory, and ultimately baseless objections to producing the requested information.  NASA has converted the FOIA process— which is intended to provide citizens with prompt and complete disclosure—into a tedious and protracted battle in which documents are produced late, grudgingly, and in an incomplete and haphazard manner.

### The 2007 FOIA Requests Relating to the NASA Temperature Record

8.     In August 2007, Plaintiff served FOIA requests on NASA seeking documents and information relating to changes in NASA's temperature record made in response to questions from Steven McIntyre, a statistical expert who has played a pioneering role in subjecting the "consensus" about man-made global warming to increased public and scientific scrutiny.  In August 2007, Mr. McIntyre discovered what he believed to be an error in NASA's publicly available temperature data sets and claims about United States temperatures.  The error had the overall effect of overstating temperatures in the United States—and thereby portraying a misleading amount of warming—from 2000 onward.  Mr. McIntyre maintains a leading scientific blog called Climate Audit.org, and he posted his findings on his website and e-mailed NASA climate scientists for a response.

9.     From 2001 through 2007, NASA aggressively promoted these overstatements about temperature data through the media.  And during that period, scientists at GISS proclaimed that the temperature record was reliable, that adjustments were made to the data without any pro-warming bias, and that some of the brightest and most independent minds in the country had cross-checked it.  In public forums, GISS scientists downplayed criticisms of their temperature

data sets and attacked critics as "cranks," internet "court jesters," climate change "deniers," and otherwise unserious people who did not believe in the scientific method or who did not have the intellectual tools to understand the sophisticated nuances of climate research that, by contrast, the GISS scientists readily grasped.

10.     Mr. McIntyre's analysis questioning the integrity of the post-2000 temperature record triggered a frenzy of activity within NASA.  Over a 72-hour period, the leading climate scientists at GISS, including GISS Director James Hansen and Gavin Schmidt, engaged in a furious round-the-clock effort to rebut Mr. McIntyre's criticism.  Ultimately, this effort proved unsuccessful.  On August 7, 2007, GISS scientists e-mailed Mr. McIntyre and acknowledged errors in the GISS temperature data set.

11.     On August 7, 2007, GISS revised millions of values in its temperature data set, including values for temperatures before 2000.  Many scientists rely on the temperature data set for research purposes.  But NASA did not issue a press release announcing these corrections or otherwise offer any official, public explanation of why it made them.

12.     As a consequence of the corrections, the NASA temperature data set showed that, at least as far as the continental United States was concerned, 1998 was no longer the warmest year on record.  The new warmest year was instead 1934.  This directly contradicted previous NASA statements that 1998 was the "hottest" year on record.  It also undermined a key pillar of the global warming narrative, which is premised on "unusual warming" and an escalating warming trend.  NASA has been a leading public proponent of this narrative, issuing press releases over the years bearing titles such as "2005 Warmest Year in a Century" and "2006 was Earth's Fifth Warmest Year."

13.     Between early August and mid-September 2007, GISS scientists sought to reverse-engineer the temperature data so that 1998 could again be deemed the warmest year on record.  Mr. McIntyre and others who scrutinized NASA's on-line temperature record observed that, during this five-week period, NASA withdrew and then re-published substantially revised temperature data sets without any announcement, notice, or public explanation on at least three occasions.  After the final adjustment in September 2007, the year 1998 had been moved back into a tie with 1934 as the "hottest" year on record.

14.     On August 24, 2007, Plaintiff filed a FOIA Request (No. 10-F-2007-172, hereinafter "Request 07-172") seeking information about the temperature data set corrections. Ex. A.

15.     On August 27, 2007, Plaintiff filed a FOIA Request (No. 10-F-2007-175, hereinafter "Request 07-175") seeking, among other things, all internal NASA documents generated in response to the original FOIA request.  Ex. B.  The purpose of Request 07-175 was to document the integrity of NASA's process for responding to a FOIA request on a high-profile and sensitive matter on which it had been shown to be wrong.

16.     Pursuant to statute, responses to these FOIA requests were due on September 24 and September 27, 2007, respectively.  NASA did not respond within that timeframe.

17.     On January 28, 2008, Plaintiff notified NASA that its response was four months overdue and requested immediate compliance.  NASA did not respond.

18.     On June 23, 2008, Plaintiff notified NASA that the agency's response to Request 07-175 was now almost one year overdue.  A NASA FOIA Public Liaison Officer stated:  "We apologize for the delay in responding to your e-mail.  Your requested information has been forwarded to the Office of Chief Counsel for review.  I will contact you as soon as the

information has been returned to me for final processing.  Thank you again for your patience

regarding your request."

19.    Seven months passed without any further response from NASA.

20.    On January 21, 2009, after the election and inauguration of a new president,

Plaintiff again contacted NASA and asked for production of the documents.  One day after

taking office, President Obama issued a Presidential Directive to executive agencies

commanding them to comply with FOIA to the fullest extent of the law.  *Presidential*

*Memorandum For Heads of Executive Departments and Agencies*, 75 Fed. Reg. § 4683, 4683

(Jan. 21, 2009).  The Presidential Directive states that

> Nondisclosure should never be based on an effort to protect the personal interests
> of Government officials at the expense of those they are supposed to serve.  In
> responding to requests under the FOIA, executive branch agencies should act
> promptly and in a spirit of cooperation, recognizing that such agencies are
> servants of the public.

Plaintiff reminded NASA of President Obama's directive to provide the broadest possible

disclosure under FOIA.  NASA did not respond.

21.    Ten more months passed, and still NASA did not respond.

22.    On November 24, 2009, Plaintiff notified NASA of its intent to file a lawsuit if

the agency did not comply by December 22, 2009.

23.    On December 21, 2009, NASA requested more time to comply with the request.

Plaintiff agreed to a short extension.

24.    On December 31, 2009—approximately two and a half years after Plaintiff had

originally submitted its first two FOIA requests—NASA produced a "partial response"

consisting of 208 pages of heavily-redacted material.  Ex. C.

25.    The production was woefully incomplete and failed to include documents that, for

example, Plaintiff had been able to obtain from third-party sources.

26.     On February 23, 2010, NASA provided an additional production of one box of 1500 heavily redacted pages.  NASA stated that its response to Requests 172 and 175 was complete.

### The Real Climate FOIA Request

27.     On January 28, 2008, Plaintiff submitted a third FOIA request seeking records relating to activity by NASA scientists on a website called Real Climate.org that occurred on government time to further government purposes (hereinafter, Request "08-040").  Ex. D.  This request specifically sought e-mails sent or received by Gavin Schmidt, a climate researcher at GISS, who regularly writes, edits, and manages content at the Real Climate website.

28.     Schmidt works extensively on Real Climate during NASA work hours.  He uses his NASA e-mail address and/or NASA servers and computer equipment when posting to the Real Climate website.  Until relatively recently, posts on Real Climate.org were accompanied by timestamps, which clearly indicated that Dr. Schmidt had been posting to Real Climate during the business day.

29.     After Plaintiff filed its FOIA request seeking Schmidt's Real Climate e-mails, someone retroactively deleted all timestamps from Real Climate posts.  Timestamps also were deleted from all archived posts.  Plaintiff has retained high-resolution color copies of the Real Climate site that still reflect the original timestamps.

30.     NASA and GISS management know that Schmidt engages in Real Climate-related activities during work hours and have approved, ratified, and endorsed those activities.

31.     Schmidt solicits work from NASA staff to post on Real Climate.

32.     Indeed, GISS uses RealClimate for public relations and advocacy purposes on issues that pertain directly to agency business.

33.     For example, when correcting its temperature data record, in response to the 2007 McIntyre criticism, NASA did not issue a press release or make a formal announcement. Instead, after a team of GISS employees spent days analyzing data and formulating a response— all using NASA resources and on taxpayer time—GISS's director James Hansen published the team's response in a post entitled "A Light on Upstairs?" to his personal website hosted by Columbia University.

34.     That same day, Schmidt posted an entry at Real Climate entitled "1934 and All That" using similar graphs and much of the same analysis used by Hansen in his post.

35.     NASA received numerous press inquiries regarding the GISS temperature corrections.  NASA referred reporters to Hansen's Columbia University post and to Schmidt's Real Climate post.

36.     This is only one of several examples where NASA climate researchers use Real Climate in the course of their official duties.

37.     NASA scientists also use Real Climate as a forum for criticizing and mounting personal attacks on scientists and other citizens who express doubt and skepticism about the "settled" science of climate change.  These criticisms and personal attacks occur on taxpayer time and are taxpayer financed.

38.     NASA engaged in the same pattern of delay and obstruction on the Real Climate FOIA request as it did with the 2007 FOIA requests.  NASA's response was due February 26, 2008, but NASA did not respond by that date.

39.     Plaintiff contacted NASA to request compliance on June 23, 2008, and again on August 28, 2008, but NASA did not produce the requested documents.

40.     On January 21, 2009, Plaintiff notified NASA that its response was overdue by eleven months.  NASA did not respond.  Ten months later, on November 24, 2009, Plaintiff notified NASA of its intent to sue.

41.     On December 31, 2009, Plaintiff received NASA's Initial Determination.  Ex. E.  The Initial Determination stated that responsive materials fell into two categories:  "(i) [Real Climate] e-mail correspondence between Dr. Schmidt and other NASA officials," which it said it would produce, and "(ii) [Real Climate] e-mail correspondence between Dr. Schmidt and non-NASA external or private individuals or entities."  Ex. E at 2.  NASA declined to provide any documents from this second category because, in its view, the documents were not "agency records" as NASA purportedly does not "possess" or "control" them within the meaning of FOIA.

**Plaintiff's Internal Agency Appeals of NASA's Initial Determinations**

42.     By letter dated January 29, 2010, Plaintiff appealed NASA's response to all three FOIA requests to the NASA Administrator.  The Internal Appeal was 26 pages and contained 66 exhibits.  Ex. F.

43.     Plaintiff's appeal of the two requests addressing the 2007 temperature corrections (Requests 172 and 175) demonstrated that NASA's search was not reasonable.  It identified several categories of documents that existed, were responsive, but that were not produced.  For example, Plaintiff demonstrated that, notwithstanding the veritable public relations storm that accompanied the 2007 temperature corrections, and significant media coverage, NASA produced only a few e-mails to and from members of the media.  Similarly, Plaintiff's Request 175 had sought all records relating to NASA's response to Request 172.  Yet NASA did not produce any

responsive documents, suggesting (implausibly) that NASA did not generate a single document or e-mail in the course of responding to Plaintiff's initial FOIA request.

44.     Plaintiff appealed NASA's Initial Determination on the Real Climate request on two separate grounds.  First, Plaintiff challenged NASA's definition of "agency records" as legally flawed and overly restrictive.

45.     Second, by comparing documents in the public domain to the documents NASA admitted should be released pursuant to the request, Plaintiff deduced that NASA had failed to produce documents that met even NASA's overly restrictive definition of "agency records."  For example, in November 2009, a large cache of e-mails from the University of East Anglia Climate Research Unit were posted on the internet in an event popularly referred to as "Climategate." These e-mails vividly depicted scientists seeking to evade freedom of information requests; to prohibit the publication of scholarly articles inconsistent with the "settled" science of climate change; and to cover up, conceal, and assail criticism of the vulnerabilities and potential flaws in their own scientific research.  The Climategate e-mails received worldwide attention.

46.     A review of the Climategate e-mails independently confirmed that materials responsive to Plaintiff's FOIA requests were missing from NASA's production.  The missing documents included e-mail between Schmidt and Hansen that was made public as part of Climategate but yet was not included in NASA's production.  Because NASA's production was incomplete—even under its own standard defining "agency records"—Plaintiff requested that NASA conduct a *de novo* search.

## NASA's Final Determination

47.     On March 12, 2010, NASA transmitted a letter, dated March 11, which states that it is a "final determination . . . subject to judicial review" of all three requests.  Ex. G.  The Final Determination purported to "affirm . . . in part and reverse in part," the Initial Determinations.

48.     For Requests 172 and 175 addressing the 2007 temperature corrections, NASA affirmed the agency's Initial Determination because Plaintiff's "appeal speculat[ed] as to the scope of the search without indicating why the search was not reasonably adequate."

49.     This statement ignores entire sections of Plaintiff's Internal Appeal.

50.     NASA reversed the Initial Determination with respect to the Real Climate request and agreed that the Initial Determination had misapplied the law by concluding as a categorical matter that Schmidt's Real Climate e-mails were not "agency records."  The Final Determination directed a new search for responsive documents that would include "all e-mail accounts Dr. Schmidt uses to conduct such activities," including, but not limited to, the domains "@nasa.gov," "@giss.nasa.gov," "@columbia.edu" and "@realclimate.org."  According to the Final Determination, once that new search is completed, the records will be reviewed to determine whether they were created or received "in the conduct of activities within the scope of [Schmidt's] employment at NASA" and the agency will issue a new "*initial* determination . . . no later than May 14, 2010."  Ex. G (emphasis added).

51.     The Final Determination thus recognized what had long been obvious:  GISS scientists frequently use other e-mail accounts (including accounts at Columbia University and RealClimate) to conduct NASA business.

52.     On March 22, 2010, Plaintiff notified NASA that it rejected the Final Determination's "time frame" and "procedure," pursuant to which a new *initial* determination

would be issued more than two months from the date of the Final Determination.  NASA's

position conflicts with 14 C.F.R. § 1206.607(b), which states in pertinent part:  "If the final

determination reverses in whole or in part the initial determination, the record requested (or

portion thereof) *shall be made available promptly* to the requester thereof." (emphasis added).

53.     By May 14, 2010—the date NASA itself chose as the new deadline—NASA had

not produced any additional documents.

### Congressional Inquiries Into NASA FOIA Delays

54.     NASA's delay in responding to Plaintiff's FOIA requests has attracted the

attention of Members of Congress and triggered an Inspector General investigation.

55.     On December 3, 2009, Senators Vitter and Inhofe asked NASA's Inspector

General to investigate the cause of the long delays in responding to Plaintiff's three FOIA

requests.  Ex H.

56.     The Inspector General responded by letter on February 3, 2010.  Ex I.  He

informed the Senators that he had conducted an investigation and determined that the delays

were caused by "inadequate direction given to GISS personnel as to what documents were

requested and a due date for a response;" "inadequate communication between GISS, Goddard's

Office of Chief Counsel, and FOIA offices concerning the lack of a complete response;" and

"inadequate staffing at the Goddard FOIA office" as "the sole FOIA specialist on staff was

absent for 6 months during the relevant time period and there was no back-up specialist in

place."  According to the Inspector General, the GISS Director has now "made addressing FOIA

requests a priority."

**FIRST CLAIM FOR RELIEF**
**IMPROPER WITHOLDING OF AGENCY RECORDS FOR REQUEST 08-040**
**(REAL CLIMATE MATERIALS)**

57.     Plaintiff re-alleges paragraphs 1-56 as if fully set out herein.

58.     FOIA requires all doubts to be resolved in favor of disclosure.  Federal statutes and NASA regulations require the agency to "provide for the widest practicable and appropriate dissemination of information concerning its activities and the results thereof."  42 U.S.C. § 2473; 14 C.F.R. § 1206.102.  The President has directed executive agencies to comply with FOIA to the fullest extent of the law.  *Presidential Memorandum For Heads of Executive Departments and Agencies*, 75 F.R. § 4683, 4683 (Jan. 21, 2009).

59.     Plaintiff has sought production of responsive e-mails concerning Schmidt's Real Climate activities for nearly three years.

60.     In its Final Determination, NASA declined to produce the requested information.

61.     In its Final Determination, NASA stated that it will conduct a search and make yet another "initial determination" about whether Real Climate materials were created or prepared within the scope of Schmidt's employment at NASA.

62.     Plaintiff is entitled to all of the information requested in Request 08-040 immediately.

63.     NASA is abusing the FOIA process by unreasonably withholding responsive documents and creating layer after layer of new procedures to delay the production of responsive documents.

64.     Plaintiff has a statutory right to the information it seeks.

65.     Plaintiff has exhausted its administrative remedies.

## SECOND CLAIM FOR RELIEF
## INADEQUACY OF SEARCH AND PRODUCTION FOR REQUEST 08-040
### (REAL CLIMATE MATERIALS)

66.     Plaintiff re-alleges paragraphs 1-56 as if fully set out herein.

67.     FOIA requires all doubts to be resolved in favor of disclosure.  Federal statutes and NASA regulations require the agency to "provide for the widest practicable and appropriate dissemination of information concerning its activities and the results thereof."  42 U.S.C. § 2473; 14 C.F.R. § 1206.102.  The President has directed executive agencies to comply with FOIA to the fullest extent of the law.  *Presidential Memorandum For Heads of Executive Departments and Agencies*, 75 F.R. § 4683, 4683 (Jan. 21, 2009).

68.     NASA has admitted that e-mails between NASA scientists involving Real Climate are subject to FOIA and should be produced.

69.     Documents responsive to Request No. 08-040 were not produced.

70.     Documents from other sources (including Climategate e-mail) prove that NASA has not made a complete production.  These documents cast substantial doubt on the integrity and thoroughness of NASA's search.

71.     Plaintiff has a statutory right to the information it seeks.

72.     Plaintiff has exhausted its administrative remedies.

## THIRD CLAIM FOR RELIEF
## INADEQUACY OF SEARCH AND PRODUCTION FOR REQUESTS 07-172 & 07-175
### (E-MAIL ACCOUNTS)

73.     Plaintiff re-alleges paragraphs 1-56 as if fully set out herein.

74.     FOIA requires all doubts to be resolved in favor of disclosure.  Federal statutes and NASA regulations require the agency to "provide for the widest practicable and appropriate dissemination of information concerning its activities and the results thereof."  42 U.S.C. § 2473;

14 C.F.R. § 1206.102.  The President has directed executive agencies to comply with FOIA to

the fullest extent of the law.  *Presidential Memorandum For Heads of Executive Departments*

*and Agencies*, 75 F.R. § 4683, 4683 (Jan. 21, 2009).

75.     NASA has stated that all documents responsive to requests 07-172 & 07-175 were

produced.

76.     Documents responsive to Requests 07-172 & 07-175 were not produced.

77.     NASA has admitted that NASA employees, including Gavin Schmidt, conduct

NASA-related activities using non-NASA e-mail accounts, in particular an e-mail account hosted

at the domain Columbia.edu.  NASA has also admitted that it has the ability to search those non-

NASA domains.

78.     It is a matter of public record that Hansen maintains an e-mail address at the

columbia.edu domain.  Other GISS scientists also use non-NASA e-mail addresses to conduct

activities within the scope of their employment.

79.     NASA's production does not contain any records from the Columbia University

domain or any other e-mail addresses that Hansen or other GISS scientists use to conduct NASA

business.

80.     NASA's failure to produce any such records casts substantial doubt on the

integrity and thoroughness of NASA's search.

81.     Plaintiff has a statutory right to the information it seeks.

82.     Plaintiff has exhausted its administrative remedies.

**FOURTH CLAIM FOR RELIEF**
**INADEQUACY OF SEARCH AND PRODUCTION FOR REQUEST 07-175**
**(FOIA RESPONSE)**

83.     Plaintiff re-alleges paragraphs 1-56 as if fully set out herein.

84.     FOIA requires all doubts to be resolved in favor of disclosure.  Federal statutes and NASA regulations require the agency to "provide for the widest practicable and appropriate dissemination of information concerning its activities and the results thereof."  42 U.S.C. § 2473; 14 C.F.R. § 1206.102.  The President has directed executive agencies to comply with FOIA to the fullest extent of the law.  *Presidential Memorandum For Heads of Executive Departments and Agencies*, 75 F.R. § 4683, 4683 (Jan. 21, 2009).

85.     NASA has stated that all documents responsive to request 07-175 have been produced.

86.     Documents responsive to request 07-175 were not produced.

87.     In Request No. 07-175, Plaintiff sought "all internal communications citing or addressing this Requesting party's FOI Request dated August 24, 2007."  No documents have been produced relative to this portion of request 07-175.

88.     Plaintiff has a statutory right to the information it seeks.

89.     Plaintiff has exhausted its administrative remedies.

## FIFTH CLAIM FOR RELIEF
## INADEQUACY OF SEARCH AND PRODUCTION FOR REQUEST 07-175
## (MCINTYRE DOCUMENTS)

90.     Plaintiff re-alleges paragraphs 1-56 as if fully set out herein.

91.     FOIA requires all doubts to be resolved in favor of disclosure.  Federal statutes and NASA regulations require the agency to "provide for the widest practicable and appropriate dissemination of information concerning its activities and the results thereof."  42 U.S.C. § 2473; 14 C.F.R. § 1206.102.  The President has directed executive agencies to comply with FOIA to the fullest extent of the law.  *Presidential Memorandum For Heads of Executive Departments and Agencies*, 75 F.R. § 4683, 4683 (Jan. 21, 2009).

92.     NASA has stated that all documents responsive to request 07-175 have been produced.

93.     Documents responsive to Request 07-175 were not produced.

94.     Request 07-175 sought all agency records related to Stephen McIntyre's e-mail on or about August 3, 2007, notifying GISS of an error in its temperature data.  Among the documents produced in response to that request are three pages that reference a GISS directory labeled "/clima1/Steve/alternate_cleaning."  Given the name of this directory and the topics referenced in the e-mails discussing the directory, it is highly likely that the directory contains documents that are responsive to Plaintiff's FOIA request.

95.     No documents from that directory have been produced.

96.     NASA's failure to produce any records from the disclosed subdirectory casts substantial doubt on the integrity and thoroughness of NASA's search.

97.     Plaintiff has a statutory right to the information it seeks.

98.     Plaintiff has exhausted its administrative remedies.

* * *

WHEREFORE, as a result of the foregoing, Plaintiff prays that this Court:

A.     Declare that NASA's searches in response to FOIA requests 07-172, 07-175, and 08-040 were not reasonable, and hence were inadequate under FOIA;

B.     Declare that NASA's refusal to produce all of Schmidt's e-mails in its possession or control that are responsive to Request 08-040 is unlawful;

C.     Enter an injunction requiring NASA to make all responsive documents from existing searches available to Plaintiff, or to file a detailed *Vaughn* index claiming FOIA exemptions, within 10 business days;

D.    Enter an injunction requiring NASA to conduct additional searches reasonably calculated to produce relevant documents and to make production thereupon within 10 business days, or to file a detailed *Vaughn* index claiming FOIA exemptions within 10 business days, of the additional searches;

E.    Retain jurisdiction over this matter as appropriate;

F.    Award Plaintiff its costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 522(a)(4)(E); and

G.    Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated:  May 27, 2010

Andrew S. Tulumello
(Bar No. 468351)

Chris Horner (Bar No. 440107)
Hans Bader (Bar No. 466545)
COMPETITIVE ENTERPRISE INSTITUTE
1889 L Street N.W.
Washington, D.C. 20036
Telephone:  202-331-1010
Facsimile:  202-331-0640

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C. 20036
Telephone: 202-955-8500
Facsimile: 202-467-0539

*Counsel for Competitive Enterprise Institute*