**COMPETITIVE ENTERPRISE INSTITUTE,**

              **Plaintiff,**

           **v.**

**NATIONAL AERONAUTICS AND SPACE ADMINISTRATION,**

              **Defendant.**

**Civil Action No. 10-883 (BJR)**

**MEMORANDUM OPINION**

Competitive Enterprise Institute ("CEI" or "Plaintiff") filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel production of records from the National Aeronautics and Space Administration ("NASA" or the "agency") related to its revision of certain global temperature data sets, as well as correspondence of a NASA employee, Gavin A. Schmidt, related to a blog called "RealClimate." Before the court is NASA's motion for summary judgment.

## I. BACKGROUND

Plaintiff CEI is a think tank based in Washington, D.C. that has been "extensively involved in the national debate over climate policy." *See Complaint* ("Compl.") (Dkt. No. 1) ¶ 2. The Goddard Institute of Space Studies ("GISS" or "the agency") is a component of NASA which has become a leading center for the study of atmospheric modeling and climate change. *See Declaration of Larry D. Travis* ("Travis Decl.") (Dkt. No. 15-3) ¶ 5d. GISS is located in New York City and was established to "facilitate an informal affiliation between NASA and Columbia University . . . to enable the federal government and Columbia to undertake collaborative research on space science." *Id.* Dr. Gavin Schmidt is a physical scientist working

at GISS. *Id.* ¶ 16. Dr. Schmidt contributes to the content of a blog called RealClimate.org ("RealClimate") which discusses topics related to climate science. *Id.* ¶ 13; Compl. ¶ 27.

In August 2007, a statistician named Stephen McIntyre discovered an error in NASA's temperature data sets, which he alleged caused an overstatement of temperatures in the United States from the year 2000 onward. *See* Compl. ¶ 8. He posted his findings on his website, ClimateAudit.org, and also emailed them to NASA climate scientists. *Id.* In response, on August 7, 2007, GISS revised values in its temperature data set. *See* Compl. ¶ 11. GISS did not issue a press release announcing or explaining the corrections. *Id.*

CEI filed three FOIA requests with NASA: one on August 24, 2007 ("Request 07-175"), seeking information about the temperature data set corrections; a second on August 27, 2007 ("Request 07-172"), seeking in part documents generated in response to CEI's first FOIA request; and a third on January 28, 2008 ("Request 08-040"), seeking emails or other correspondence sent or received by Dr. Schmidt related to RealClimate. *See* Compl., Exs. A, B, D. Approximately two years later, NASA still had not responded to these requests. The delay prompted a letter, dated December 3, 2009, from two U.S. Senators to NASA's Inspector General requesting that he investigate the reasons for the agency's delay in responding. *See* Compl., Ex. H. The Inspector General determined that the delay was caused by "insufficient staffing in the Goddard FOIA office, inadequate oversight of Goddard's FOIA procedures, and lack of management attention to issues identified by the FOIA office." Compl., Ex. I.

On December 31, 2009, NASA issued an "Initial Determination on Partial Responses" with respect to Requests 07-172 and 07-175 and released 205 pages of responsive emails to Plaintiff. *See Defendant's Statement of Material Facts as to Which There is no Genuine Issue* ("Def.'s St.") (Dkt. No. 15-1) ¶ 4; *see also* Compl., Ex. C. NASA also released to Plaintiff

approximately 545 pages in response to Request 08-040 as well as a letter, "Notice of Initial Determination and Response." Def.'s St. ¶ 6; *see also* Compl., Ex. E.

On January 29, 2010, Plaintiff appealed the agency's responses to all three of its FOIA requests. *See* Compl., Ex. F. On February 23, 2010, while that appeal was pending, NASA released approximately 1500 additional pages in response to Requests 07-172 and 07-175. Def.'s St. ¶ 5; *see also* Compl. ¶ 26. The letter accompanying these documents indicated that the documents "complete[d]" NASA's response to these two requests. *See* Travis Decl. Ex. 4; Def.'s St. ¶ 5.

On March 11, 2010, NASA issued its Final Determination on the appeal of all three FOIA requests. *See* Compl., Ex. G. The Final Determination affirmed in part and reversed in part the Initial Determinations. *See id.* at 4. It reversed the conclusion in the Initial Determination regarding Request 08-040 that "R[eal] C[limate] email correspondence between Dr. Schmidt and non-NASA external or private individuals or entities are not agency documents" and directed the agency to conduct a new search, including all of Dr. Schmidt's email addresses. *Id.* It affirmed the Initial Determination with respect to Requests 07-172 and 07-175. *Id.*

On July 9, 2010, NASA released an additional 190 pages of documents to Plaintiff in response to Request 08-040. Def.'s St. ¶ 8; *see also* Travis Decl. Ex. 5. The agency has submitted a *Vaughn* index explaining the documents the agency withheld in part from its July 9, 2010 response. Def.'s St. ¶ 9. CEI's complaint does not challenge any of the exemptions invoked by NASA.

In support of its motion for summary judgment, the agency has submitted two declarations by Larry D. Travis, the Associate Chief of GISS.

## II.     LEGAL STANDARD

The Freedom of Information Act provides "a statutory right of public access to documents and records held by agencies of the federal government."  *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982); *see also* 5 U.S.C. § 552.  The statute provides for disclosure of agency records, upon a proper request, unless the information sought falls within any of nine exemptions.  *See* 5 U.S.C. §§ 552(a)(3), (b).  The "dominant objective of the Act" is "disclosure, not secrecy."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S. Ct. 1592, 1599, 48 L. Ed. 2d 11 (1976).

Most FOIA cases can be resolved on summary judgment.  *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary judgment is granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  In reviewing the motion for summary judgment, the court reviews the matter *de novo*.  *See* 5 U.S.C. § 552(a)(4)(B); *see also Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008).

In the FOIA context, the facts are viewed in the light most favorable to the requester and the agency has the burden of showing that there is no genuine dispute as to any material fact.  *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  "What the agency must show beyond material doubt is that it has conducted a search reasonably calculated to uncover all relevant documents."  *Id.*  To meet this burden, the agency may submit affidavits or declarations that are "relatively detailed and nonconclusory and . . . submitted in good faith."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)) (internal quotation marks omitted).  Such agency affidavits "are accorded a

presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

## III. CEI'S 2007 REQUESTS

CEI submitted two FOIA requests to NASA in August 2007 (the "2007 requests"). CEI's first request, Request 07-175, sought: "copies of all records, documents, internal communications and other relevant covered material created by, provided to and/or sent by NASA/Goddard Institute for Space Studies (GISS), citing, referencing, discussing or otherwise related to the August 2007 correction by NASA/GISS of online temperature data for over 1200 US HCN stations and for their U.S. temperature history[.]" *See* Compl., Ex. A. The second request, Request 07-172, sought: "copies of all records, documents, internal communications and other relevant covered material created by, provided to and/or sent by NASA/Goddard Institute for Space Studies (GISS), citing, referencing, discussing or **otherwise relating to the email(s) sent to James Hansen and/or Reto A. Ruedy from a Stephen (Steve) Mcintyre - possibly but not necessarily using the address stephen.mcintyre@utoronto.ca - beginning on or about August 3, 2007 specifically mail calling their attention to an error(s) in NASA/GISS online temperature data**." *See* Compl., Ex. B (emphasis in original).

*A. CEI Exhausted its Administrative Remedies*

NASA argues that Plaintiff failed to exhaust available administrative remedies with respect to the 2007 requests. *Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment* ("Def.'s Mtn.") (Dkt. No. 16) at 2. The agency's reasoning goes

as follows: CEI administratively appealed only the agency's "partial response" of December 31, 2009. While this appeal was pending, the agency released more documents and completed its response to the 2007 requests. NASA posits that because Plaintiff did not administratively appeal the agency's completed response, no claims regarding the agency's response to the 2007 requests are properly before the court.

In general, a FOIA requester must exhaust administrative appeal remedies before suing in federal district court. *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013); *see also Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). FOIA's exhaustion requirement is not jurisdictional, but rather a "jurisprudential doctrine." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). In that respect, courts have held that a "failure to exhaust is by no means an automatic bar to judicial review; courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990); *see also Hidalgo*, 344 F.3d at 1258-59. The purposes of exhaustion in FOIA cases are to give "the agency [ ] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby*, 920 F.2d at 61.

In FOIA cases, this court considers whether the requirement of exhaustion of administrative remedies has been met under the standard of Federal Rule of Civil Procedure 12(b)(6). *See Hidalgo*, 344 F.3d at 1260 (remanding to the district court with instructions to dismiss the complaint under Rule 12(b)(6) for failure to exhaust administrative remedies); *see also Acosta v. FBI*, No. 12-1578 (JEB), --- F. Supp. 2d ---, 2013 WL 1633068, at *1 (D.D.C. Apr. 17, 2013) ("[T]he D.C. Circuit has directed that the Court address [ ] exhaustion arguments under Federal Rule of Civil Procedure 12(b)(6)."). "To survive a motion to dismiss [under Rule

12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Here, the purposes of the exhaustion requirement have been met. In the administrative appeal, NASA had the "opportunity to consider the very issues" that CEI raises in this action; namely, the adequacy of the search and the adequacy of the production.[1] *See Hidalgo*, 344 F.3d at 1259 (holding that the requester had not met the exhaustion requirement because his appeal did not place the substance of the agency's response before the agency for review). Therefore, the agency had the opportunity to apply its expertise to the matter and to develop a factual record. NASA issued an initial determination, accepted CEI's appeal of that determination, reviewed the appeal, and issued a final decision subject to judicial review. Although the agency's Final Determination noted that CEI's "assertions seem premature" because "the initial determination is styled as a 'partial response,'" the agency did not decline to make a final decision as to its response to the 2007 requests. *See* Compl., Ex. G at 4. If the agency wanted an opportunity to review its response further, it should have declined to accept and process CEI's appeal. Accordingly, this court finds that CEI exhausted its administrative remedies.

B. *The Adequacy of NASA's Search*

CEI challenges the adequacy of NASA's search for responsive records on numerous grounds. The declaration by the Associate Chief of GISS, Larry D. Travis (the "Travis Declaration") and his supplemental declaration explain the search. In short, GISS searched

---

[1] The agency's Final Determination explains that CEI challenged the adequacy of the search: "Your appeal letter also asserts that [ ] '[t]he totality of the facts and circumstances suggest that the agency did not undertake a credible or reasonable search' for records pursuant to your August 24 and August 27, 2007, requests." *See* Compl., Ex. G at 3.

employee email accounts for relevant emails from a specified time period and also conducted a keyword search of those email accounts. Travis Decl. ¶¶ 26-27. Moreover, "[i]t was known by GISS officials that all communications and work activity related to the requests were done by a limited number of personnel and all non-verbal communications were conducted solely by email." *Id.* ¶ 27a.

CEI makes the following arguments as to why the agency is not entitled to summary judgment on the adequacy of its search for records responsive to the 2007 requests:

1. NASA is improperly withholding two electronic directories referred to as the "Steve" directory and the "alternate_cleaning" directory;

2. NASA did not search Dr. Schmidt's @columbia.edu account;

3. NASA failed to search records other than email records;

4. NASA did not produce records relating to media inquiries about the data corrections;

5. NASA produced no internal deliberations about CEI's first request, Request 07-175;

6. The declaration does not identify all the search terms used;

7. The declaration also fails to describe which GISS personnel performed the search;

8. NASA acted in bad faith because all three FOIA requests were subjected to inexcusably long delays that are not explained by the agency;

9. NASA acted in bad faith because the declaration contains internal contradictions.

The court will address each of these arguments in turn.

**1. The "Steve" and the "alternate_cleaning" directories**

CEI argues that the agency is improperly withholding documents located in a GISS directory labeled "/clima1/Steve/alternate_cleaning" (the "Steve" directory) that are responsive to its requests. *Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's*

*Motion for Summary Judgment* ("Opp.") (Dkt. No. 20) at 8. The FOIA grants the court

"jurisdiction to enjoin the agency from withholding agency records and to order the production

of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). "In

a suit brought to compel production, an agency is entitled to summary judgment if no material

facts are in dispute and if it demonstrates that each document that falls within the class requested

either has been produced . . . or is wholly exempt from the Act's inspection requirements."

*Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (internal

quotation marks and citation omitted).

NASA asserts that it is not required to produce the documents on the "Steve" directory

because the "primary" files in this directory "are only intelligible if read by a computer program

or a commercial visualization tool." Travis Decl. ¶ 28a; Def.'s Mtn. at 16. NASA contends that

the 2007 requests do not seek computer programs and data files. NASA also argues that the

charts and graphs created by the "Steve" directory were already in the public domain, and

therefore in CEI's possession, at the time NASA received CEI's requests. Def.'s Mtn. at 16.

However, because CEI's requests broadly seek "records" and "other relevant covered

material" related to the changes made to the temperature data, the requests are "reasonably

susceptible to the broader reading" that the requested records include computer programs and

data files related to the temperature revisions. *LaCedra v. Exec. Office for U.S. Attorneys*, 317

F.3d 345, 348 (D.C. Cir. 2003); *see also Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885,

890 (D.C. Cir. 1995) ("Although a requester must 'reasonably describe[ ]' the records sought, . .

. an agency also has a duty to construe a FOIA request liberally."). The FOIA's definition of

"record" includes information maintained in electronic format. *See* 5 U.S.C. § 552(f)(2)(A).

Additionally, the fact that the directory is only intelligible to a computer does not remove the

directory from the category of "agency records."  *See Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Servs.*, 844 F. Supp. 770, 782 (D.D.C. 1993) (determining that a software program that was "uniquely suited to its underlying database," was an agency record).

Moreover, the agency's affidavit suggests that documents in the "Steve" directory are responsive to the 2007 requests, because the directory contains in part the temperature data that is the subject of the requests.  Although CEI had access to visual representations of this data through the charts and graphs posted on public websites, these representations are not the same as the data used to create them.  Therefore, the court will direct the agency to produce responsive documents in the "Steve" directory or explain why they are exempt from disclosure.

Nonetheless, NASA has shown that the subdirectory "alternate_cleaning" does not hold responsive information.  This is because the information in this subdirectory "does not contain information that is relevant to GISS's modification of its analysis following McIntyre's August 3, 2007 email."  Travis Decl. ¶ 28c.  Instead, the information on the "alternate_cleaning" subdirectory relates to data collected by two stations <u>outside</u> the contiguous United States.  *Id.* Plaintiff's requests plainly seek records related to the correction of data for the "over 1200 US HCN stations," which are stations <u>within</u> the contiguous United States, and this information is not in the "alternate_cleaning" subdirectory.  CEI may want this information, but its 2007 requests do not seek it and "an agency processing a FOIA request is not required to divine a requester's intent."  *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003). Accordingly, NASA is entitled to a judgment that it is not improperly withholding responsive records in the "alternate_cleaning" subdirectory.

**2. NASA was not required to search Dr. Schmidt's @columbia.edu email account**

According to CEI, NASA did not search Dr. Schmidt's @columbia.edu email account and this rendered the search unreasonable. Opp. at 12. For the following reasons, the court disagrees. It is not clear from the agency's declarations whether the search included Dr. Schmidt's @columbia.edu email account. *See* Travis Decl. ¶ 27a (attesting that GISS personnel "searched their email accounts believed to contain responsive documents."). However, even assuming in favor of Plaintiff that the search did not include this email account, the agency has shown that its search of email records was reasonably calculated to uncover all relevant documents.

A document is subject to disclosure under the FOIA only if it is an "agency record." *See* 5 U.S.C. § 552(a)(4)(B). The Supreme Court has held that documents qualify as "agency records" if they are (1) created or obtained by the agency, and (2) in the agency's control. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-46, 109 S. Ct. 2841, 2847-48, 106 L. Ed. 2d 112 (1989). "Control" means "that the materials have come into the agency's possession in the legitimate conduct of its official duties." *Id.* at 145. Nevertheless, "the term 'agency records' is not so broad as to include personal materials in an employee's possession, even though the materials may be physically located at the agency." *Id.* This Circuit has also described the test of whether a document is an agency record as one that focuses "on a variety of factors surrounding the creation, possession, control, and use of the document by an agency." *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006) (quoting *Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d 1484, 1490 (D.C. Cir. 1984)).

To evaluate the second prong of this test—the agency's control of the records—the court balances four factors under a totality of the circumstances test:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*Burka v. U.S. Dep't of Health & Human Servs.,* 87 F.3d 508, 515 (D.C. Cir. 1996) (quoting *Tax Analysts v. U.S. Dep't of Justice,* 845 F.2d 1060, 1069 (D.C. Cir. 1988), *aff'd on other grounds,* 492 U.S. 136, 109 S. Ct. 2841, 106 L. Ed. 2d 112 (1989)) (internal quotation marks omitted); *see also Consumer Fed'n of Am.*, 455 F.3d at 287 (describing it as a "totality of the circumstances" test). In addition, "[b]oth the Supreme Court and the Court of Appeals have explained that an agency's actual use of a document is often more probative than the agency's subjective intent." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 527 F. Supp. 2d 76, 97 (D.D.C. 2007), *appeal dismissed*, 532 F.3d 860 (D.C. Cir. 2008).

Applying these four "control" factors, the court determines that Dr. Schmidt's emails located only on the @columbia.edu domain are not in the agency's control. First, Dr. Schmidt's search of his @columbia.edu account in response to CEI's 2008 FOIA request (discussed later in this decision) was purely a voluntary search on his part and does not show that he intended to relinquish control over his account. *See* Travis. Decl. ¶ 34. Second, the agency does not have the ability to use and dispose of emails on the @columbia.edu domain as it sees fit. The Columbia University email system is entirely separate from the GISS email system. *See id.* ¶ 12c. Only Dr. Schmidt has access to his @columbia.edu email account. *See id.* Third, there is no evidence that agency personnel read or relied upon Dr. Schmidt's @columbia.edu emails that were not sent to or received from the NASA email domain. Fourth, the record does not show that any of Dr. Schmidt's emails located only in his @columbia.edu email account were integrated into a NASA record system or file. Finally, to the extent the use of a document

determines whether it is an agency record, there is nothing in the record that suggests that Dr. Schmidt's emails located only in his @columbia.edu account (and thus not exchanged with a NASA email account) were used by agency personnel to carry out agency business. *Cf. Landmark Legal Found. v. EPA*, No. 12-1726, --- F. Supp. 2d ---, 2013 WL 4083285, at *5 (D.D.C. Aug. 14, 2013) (finding an issue of material fact as to the adequacy of the agency's search where the agency did not search for personal emails even though there was a concrete example in the record of an agency official using a personal email account to conduct official agency business); *see also Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 140 (D.D.C. 2011) (determining that emails to and from the Solicitor General in her capacity as a judicial nominee were not "agency records" because the correspondence was not relied upon by the agency in carrying out its business).

All of the factors indicate that the agency does not have control over the @columbia.edu domain. As a result, the court does not need to analyze the first prong of the *Tax Analysts* test, whether the emails were created or obtained by the agency. *See Tax Analysts*, 492 U.S. at 145. Emails located only in Dr. Schmidt's @columbia.edu email account are personal materials that the agency was not required to search. *See Houghton v. U.S. Dep't of State*, 875 F. Supp. 2d 22, 30 (D.D.C. 2012) (determining that the agency was not required to search employee's personal files, but that personal files do not include her official agency email address).

Of course, not all of Dr. Schmidt's emails from or to his @columbia.edu email address are personal materials exempt from being searched. But the @columbia.edu emails that were agency records (those emails that were exchanged between Dr. Schmidt's @columbia.edu account and a NASA email account) were captured by the agency's search of employee email accounts. *See* Travis Decl. ¶ 27a. The record reveals that such emails were indeed searched for

and produced by the agency.  *See* Compl., Ex. 30 to Ex. F; Dewey Decl., Ex. R (containing

numerous emails exchanged between Dr. Schmidt's @columbia.edu email account and NASA

email accounts).  Accordingly, NASA's search was reasonable even though it did not search Dr.

Schmidt's @columbia.edu email domain, because emails located only on that domain are

personal materials.

## 3.  The agency searched all files likely to contain responsive materials

CEI argues that NASA should not have limited its search to email records.  Opp. at 14.

But the agency declarations establish that "all files likely to contain responsive materials (if such

records exist) were searched."  *Oglesby*, 920 F.2d at 68.  As Larry Travis attests:

> GISS officials are certain that all non-verbal communications were conducted
> solely by email and thus, no paper records need to be searched, for two reasons:
> (1) In or around 2006, a member of the GISS temperature analysis team began
> tele-working from a location remote from the GISS facility.  As a result, all
> communications relating to that individual's Agency activities and responsibilities
> that included the preparation, review, and transmission of written material was
> conducted solely by email; and (2) I had a member of my staff who was one of
> the members of the temperature analysis team in 2007, and who was familiar with
> the subject matter of the 07-172 and 07-175 requests, conduct a review of the
> emails located through the search for records responsive to requests 07-172 and
> 07-175 . . . [T]his individual confirmed for me that the located emails represent
> the complete record of communications relating to the subject matter of those
> requests, and that no communication relating to the subject matter of those
> requests was not captured by the emails located through the search and produced
> to Plaintiff[.]

*Second Declaration of Larry D. Travis* ("Travis Supp. Decl.) (Dkt. No. 22-1) ¶ 8b.  The agency's

declarations make clear that it has searched all record systems likely to contain responsive

records.[2]

---

[2]  CEI asserts that there "is evidence in the record that other documents, such as
recordings of phone calls, voicemails, and notes of phone calls, are likely to exist."  Opp. at 14.
But the only evidence it points to is an email in which a GISS employee notes that he is "being
besieged by e-mails and calls about this."  *See* Compl., Ex. 65 to Ex. F.  This fails to show that
there are relevant records other than emails.

**4 & 5.  The dearth of records of internal deliberations and press inquiries does not show that the agency's search was inadequate**

CEI argues that it is "impossible" that there are no records of internal discussions about CEI's first FOIA request, Request 07-175.  Opp. at 16.  CEI, however, sought only internal discussions between August 24 and 27, 2007, and the FOIA office did not receive CEI's first request until *after* it received the second request. [3]  Therefore, it is expected that there would be no internal deliberations about the first request.  But more importantly, CEI's argument is contrary to D.C. Circuit precedent explaining that "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."  *SafeCard Servs., Inc.*, 926 F.2d at 1201.  CEI's speculation that there must be records of internal discussions does not raise a sufficient issue of fact as to whether the agency conducted a reasonable search.

Likewise, CEI's assertion that there should have been more inquiries from the press and public than what was produced is mere speculation that does not create a genuine issue of material fact.  Opp. at 15.  The D.C. Circuit has held that a search is not inadequate simply because it turns up few emails, "even if the slim yield may be intuitively unlikely."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011).

**6 & 7.  The agency's declarations are legally sufficient**

CEI states that the agency's declarations are insufficient because they fail to list all the search terms used to respond to the two requests.  The Travis Declaration states that the agency "used terms *including* 'temperature,' 'gistemp,' 'HCN,' 'McIntyre,' 'Steve,' and 'Light

---

[3]  *See* Compl., Ex. B (Request 07-172) which states: "[T]his Request specifically seeks . . . internal discussion of the August 24 Request between August 24 and August 27, 2007, *inclusive*."  The agency explains that the first request was not received by the appropriate FOIA office until September 20, 2007, whereas the second request was received eight days earlier, on September 12, 2007.  *See* Travis Decl. ¶¶ 23-24.  There is no explanation as to why the requests were transferred out of order.

Upstairs.'" Travis Decl. ¶ 27b (emphasis added). Plaintiff argues that listing some, but not all, of the search terms renders the declaration insufficient. Opp. at 17. However, the list as written provides enough detail to show that the agency's search was reasonably calculated to find responsive documents. Plaintiff has not identified any key words that are missing from the list and that were necessary to retrieve responsive records.

Plaintiff also argues that the affidavit does not identify how the search was conducted because it does not explain which GISS personnel performed the search. Opp. at 17. However, the agency's declarations adequately describe who performed the searches, explaining that the searches were conducted by GISS employees who worked on the issues raised by Mr. McIntyre's email and the temperature data corrections. *See* Travis Decl. ¶ 27a.

### 8 & 9. The agency's good faith

CEI argues that NASA acted in bad faith in conducting the search. As evidence of bad faith, CEI points to NASA's very long delays in responding to the requests and its failure to explain the delays. Opp. at 18-21. CEI also alleges that internal inconsistencies in the agency's declaration are indicative of bad faith. Opp. at 19-20.

Delays in responding to FOIA requests are generally not sufficient to show agency bad faith. *See Goland*, 607 F.2d at 355 ("[I]n view of the well-publicized problems created by the statute's . . . time limits for processing FOIA requests and appeals, the [agency's] delay alone cannot be said to indicate an absence of good faith.") (footnote omitted); *see also Skurow v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 319, 326 (D.D.C. 2012) ("Courts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith."). What is more, the lengthy delays in this case were investigated by the NASA Inspector

General who found no indication of bad faith and identified agency inefficiency and insufficient staffing as causes of the delays. *See* Dewey Decl., Exs. H, I.

Furthermore, CEI's attempts to conjure bad faith out of supposed contradictions in the agency declarations are not convincing. First, CEI argues that the Travis Declaration misstates Request 07-172 by failing to note that the request sought "other relevant covered material." Opp. at 20. But this court has considered the entirety of the request and the agency's omission of these words does not amount to bad faith. Second, CEI argues that the statement in the Travis Declaration that NASA provided "emails that contained references to the 'alternate_cleaning' subdirectory, as they were among the emails [that] were captured by the search terms 'temperature' and 'gistemp'" is wrong because three of the documents produced that reference 'alternate_cleaning' do not contain either of the two search terms. *See* Travis Decl. ¶ 28d; Dewey Decl., Ex. R. However, the agency's declaration explains that responsive documents were found not only based on search terms, but also by examining emails from "the specified time periods for relevance." Travis Decl. ¶ 27b. Therefore, CEI's conclusion that these emails were produced based on "some other methodology that is *nowhere* identified or explained by the Travis Declaration" is misplaced. Opp. 21. The court finds that CEI has not raised a genuine issue as to the agency's good faith.

## IV.    CEI'S 2008 REQUEST

Request 08-040 (the "2008 request") sought: "copies of all records, documents, internal communications and other relevant covered material created by, provided to, received and/or sent by an official of NASA/Goddard Institute for Space Studies (GISS) that cites, references, discusses or otherwise relates to the content, importance or propriety of posts or entries by this individual on the weblog or 'blog' http://www.realclimate.org/, alternately styled in

correspondence as 'RealClimate', 'Real Climate', 'RC', or 'the blog'." *See* Dewey Decl., Ex. D. In addition, the request stated that: "Responsive documents described [in the request] are limited to electronic mail or other correspondence sent or received by GISS/NASA employee Gavin A. Schmidt." *Id.*

To search for responsive records, an agency attorney reviewed the 3,500 emails in Dr. Schmidt's @giss.nasa.gov email account that contained one of the four search terms identified by CEI in its request. Travis Decl. ¶ 32. The agency released to CEI "[a]ll emails that had any reference whatsoever to Agency matters." *Id.* ¶ 32a. The agency also asked all GISS personnel to search their archived email on the @giss.nasa.gov domain for any emails sent to them by Dr. Schmidt's @columbia.edu email address that contained one of the search terms. *Id.* ¶ 33. Dr. Schmidt also undertook a search of his own @columbia.edu account for responsive emails sent to or received from agency or federal personnel and provided all responsive emails to the legal office for review. *Id.* ¶ 34. Now, after having already conducted this search, the agency contends that none of Dr. Schmidt's RealClimate related emails are agency records.

CEI raises a host of issues regarding the adequacy of NASA's search and the sufficiency of its declarations. In particular, CEI contends that:

1. Contrary to NASA's contention, RealClimate related emails sent or received by Dr. Schmidt are agency records, not personal records;

2. NASA did not search for emails to or from Dr. Schmidt's @realclimate.org address;

3. The Travis Declaration violates the personal knowledge requirement of Rule 56(e) of the Federal Rules of Civil Procedure;

4. The Travis Declaration is not consistent in describing the agency's criteria for withholding responsive emails from Dr. Schmidt's NASA email account;

5. NASA has not defined the criteria it used to withhold responsive emails;

6. NASA's search was not adequate because it did not search for paper records;

7. NASA should have searched the computers of other GISS scientists;

8. NASA did not search for records on any devices used to access email remotely;

9. NASA did not address how Dr. Schmidt backs up his emails;

10. NASA's search did not produce a responsive document known to exist;

11. GISS employees did not confirm that they searched for Dr. Schmidt's emails;

12. Employees searched only for emails <u>from</u>, not <u>to</u>, his @columbia.edu account;

13. NASA does not describe the methodology Dr. Schmidt used to search his @columbia.edu account;

14. Dr. Schmidt's search of his @columbia.edu account was unsupervised;

15. CEI should be allowed discovery on the issue of potential spoliation; and

16. Due to NASA's bad faith, CEI is entitled to discovery or a protective order.

The court agrees with CEI's first two arguments.

## 1. Dr. Schmidt's RealClimate emails on the NASA email domain that relate to agency business are agency records

NASA contends that <u>none</u> of Dr. Schmidt's emails that mention RealClimate are agency records, because they were created or received in his personal capacity and because the agency has no control over his email accounts.[4]  *See* Def.'s Mtn. at 21-29; Travis Decl. ¶¶ 14, 15, 19; Travis Supp. Decl. ¶ 6c.  CEI disputes this.  While the court does not agree with CEI's assertion that all RealClimate related emails are agency records, the court agrees with CEI that some of Dr. Schmidt's emails that mention RealClimate are agency records.  In particular, Dr. Schmidt's

---

[4]  Dr. Schmidt has four email accounts that are at issue in this case: @realclimate.org, @columbia.edu, and his NASA email account, which covers both @giss.nasa.gov and @nasa.gov email addresses.  Travis Decl. ¶¶ 12, 33-36.

emails mentioning RealClimate (1) that were sent to or from agency personnel, or are in Dr. Schmidt's NASA email account, and (2) that relate to agency business, are agency records.[5]

First, such emails were "create[d] or obtain[ed]" by the agency, because emails related to agency business, that were exchanged on the NASA email domain, were created on behalf of the agency.[6] *Tax Analysts*, 492 U.S. at 144; *see also Burka,* 87 F.3d at 515 (holding that data tapes were created by the agency even though the agency did not possess the tapes). Second, any email that was sent to or from a NASA email account is within the agency's control. NASA disagrees, arguing that it does not own the computer on which Dr. Schmidt uses email and that once an employee accesses his email, the email is deleted from the GISS-owned server. *See* Travis Decl. ¶¶ 12b, 18b. But the court is not convinced. For one thing, in response to the 2007 requests, NASA produced over 1700 pages of emails to or from NASA email accounts and has not asserted that it lacked control over these emails; NASA offers no persuasive argument as to why emails exchanged between Dr. Schmidt and a NASA email account are any different. Moreover, RealClimate related emails that deal with agency business and that were exchanged on the NASA email domain meet all but the first of the four "control" factors, *see Burka,* 87 F.3d at 515: NASA has some ability to use and dispose of such emails because it controls the server that delivers the emails and presumably also owns and maintains the email software; such emails relate to agency matters and were exchanged with agency employees so they were necessarily read and relied upon by agency personnel; and the emails were to some extent integrated into agency files by virtue of residing in the email accounts of agency personnel.

What is more, the record contains concrete evidence that the agency used such emails to conduct agency business. This makes them agency records. *See Consumer Fed'n of Am.*, 455

---

[5]  In other words, the sender or the recipient must be Dr. Schmidt, and either the sender or the recipient must use a NASA email address.

[6]  See the previous discussion of agency records law, *supra* part III.B.2.

F.3d at 288 ("[U]se is the decisive factor here."); *see also Bureau of Nat'l Affairs,* 742 F.2d at 1490 ("[I]n cases . . . where documents are created by an agency employee and located within the agency, use of the document becomes more important in determining the status of the document under FOIA."). NASA has produced several of Dr. Schmidt's emails that mention RealClimate and that were used for agency business.[7] Accordingly, Dr. Schmidt's RealClimate related emails that traveled on the NASA email domain and that also relate to agency business fall squarely within the meaning of "agency records," regardless of what email account Dr. Schmidt used. *See Consumer Fed'n of Am.*, 455 F.3d at 291 (the electronic calendars of agency officials that were distributed to other agency employees and were relied upon by agency employees to conduct day-to-day agency business were agency records). Therefore, NASA is not entitled to a judgment that none of Dr. Schmidt's RealClimate related emails are agency records.

**2. NASA did not search for emails to or from Dr. Schmidt's @realclimate.org account**

Although NASA claims that none of Dr. Schmidt's RealClimate emails are agency records, it nevertheless searched for Dr. Schmidt's NASA emails and @columbia.edu emails that mention RealClimate and that also relate to agency matters. However, NASA did not conduct a similar search for emails to or from Dr. Schmidt's @realclimate.org account. Accordingly, NASA is instructed to search for Dr. Schmidt's @realclimate.org emails on the NASA email domain that refer to agency business. To clarify, this means that the agency must search for and

---

[7] In one email exchange that NASA has produced, a NASA information officer forwarded to Dr. Schmidt a request for "some authoritative and quotable information on what Goddard researchers have measured as the warmest years in the last century." Dewey Decl., Ex. X. In response, Dr. Schmidt told the information officer to "point him to the RC [RealClimate] piece and to Jim's Light's out piece." *Id.* This email was created by Dr. Schmidt to carry out agency business. *See also* Dewey Decl., Ex. Z at 3 (an email exchange about the GISS temperature data correction that mentions RealClimate); Dewey Decl., Ex. Y (email to Dr. Schmidt discussing climate modeling and mentioning RealClimate); Compl., Ex. 41 to Ex. F (email to Dr. Schmidt about GISS's data correction and mentioning RealClimate).

produce responsive emails where (1) the recipient or the sender field contains Dr. Schmidt's @realclimate.org email address, and (2) the recipient or the sender field contains a NASA email account. Obviously, emails that have already been deleted cannot be produced, but to the extent the emails have been retained in agency email accounts, they must be produced. However, the agency is not required to search Dr. Schmidt's @realclimate.org email domain, because that email domain is not within the agency's control.[8]

**3, 4, 5. NASA adequately explains how it determined whether emails were responsive**

CEI argues that the agency declarations violate the personal knowledge requirement of Fed. R. Civ. P. 56(e) because CEI is "aware of no case where a person without personal knowledge has been permitted to attest to *how an agency determines what is an agency record.*" Opp. at 35 (emphasis in original). This argument appears to relate to CEI's objection to NASA's deciding whether emails relate to agency matters. However, the declaration by Larry D. Travis makes clear that he has sufficient personal knowledge to attest to what constitutes an agency matter because his duties include supervising GISS employees and managing GISS's projects and research. *See* Travis Decl. ¶ 1. In addition, a "declarant in a FOIA case satisfies Rule 56(e)'s personal knowledge requirement when 'in his declaration, [he] attest[s] to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question.'" *Hall v. U.S. Dep't of Justice*, 63 F. Supp. 2d 14, 16 n.1 (D.D.C. 1999)

---

[8] NASA does not have control of the emails located only on @realclimate.org domain for the same reasons that it does not have control over the @columbia.edu domain. *See supra* part III.B.2. Dr. Schmidt did not permit the agency to access his @realclimate.org emails; the @realclimate.org domain server is a private server that GISS is unable to access; nothing in the record shows that agency personnel read or relied upon emails located only on this domain; and there is no evidence that these emails were integrated into NASA files. *See* Travis Decl. ¶ 36. However, RealClimate related emails that were used to conduct agency business and were exchanged between agency personnel and Dr. Schmidt's @realclimate.org address must be produced.

(quoting *Spannaus v. U.S. Dep't of Justice,* 813 F.2d 1285, 1289 (4th Cir. 1987)) (brackets in original). To that end, Travis attests that he is "personally familiar with the FOIA, and CEI's FOIA requests that are the subjects [sic] of this litigation," as well as with the work conducted by GISS. Travis Decl. ¶ 4. The declaration satisfies Rule 56(e).

CEI argues that the declaration is inconsistent as to which RealClimate emails the agency decided to release, because it states first that all emails "that had any reference whatsoever to Agency matters[] were released to CEI" and then states that the withheld emails "did not refer to NASA or raise or discuss any matters or projects *related to Dr. Schmidt's official duties*." Travis Decl. ¶¶ 32a, b (emphasis added). However, CEI takes the latter quotation out of context. Reading the whole paragraph from which this quote is drawn, it is sufficiently clear that the agency released emails that had any reference to agency matters and did not release emails that made "no mention of Agency-related initiatives." *See* Travis Decl. ¶ 32b.

On a related note, CEI argues that NASA has not defined "agency matters" or Dr. Schmidt's "official duties" and thereby deprives the court of "any basis to assess the legitimacy of the agency's decisions about which documents to withhold." *See* Opp. at 36. But CEI has not made a reasonable argument as to why the agency is not able to determine which documents discuss "agency matters" and which do not. The agency has the expertise to decide what topics fall within the scope of agency matters. This expertise is not diminished simply because, as the agency notes, "there arguably might be some substantive overlap between Dr. Schmidt's work on the RealClimate blog and his official agency duties." Def.'s Mtn. at 22 n.7. *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive

branch."). Moreover, CEI has not pointed to any evidence suggesting that the agency is withholding RealClimate emails that relate to agency matters.

**6, 7, 8, 9.  NASA searched all records reasonably likely to contain responsive documents**

CEI argues that NASA should have searched other record systems.  The standard the court applies to test the adequacy of NASA's search is one of "reasonableness."  *Truitt*, 897 F.2d at 542.  The agency is not required to conduct a search of a record system that is not reasonably likely to contain responsive documents.  *See Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) ("[A]s long as this [reasonableness] standard is met, a court need not quibble over every perceived inadequacy in an agency's response, however slight.").  When an agency discovers "information suggesting the existence of documents that it could not locate without expanding the scope of its search," the agency must revise the scope of its search.  *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).

First, CEI argues that the agency should have searched for paper records.  Opp. at 37.  Travis avers that an agency attorney reviewed "all of [Dr. Schmidt's] email correspondence on the @giss.nasa.gov domain" containing one of the search terms, but he does not specify that the agency searched for paper records. Travis Decl. ¶ 32.  But here, there is nothing to suggest that responsive documents exist in paper form.  No leads emerged during NASA's search that required NASA to expand its search to include paper records.  *See Campbell*, 164 F.3d at 28.  CEI's contention that such records exist is therefore largely based on speculation.

Second, CEI argues that NASA should have searched the computers of GISS employees who communicated with Dr. Schmidt because other employees may have saved emails that Dr. Schmidt did not.  Opp. at 37.  To clarify, as part of the agency's search, GISS personnel searched their agency email accounts for emails sent to them by Dr. Schmidt from his @columbia.edu

email address.  *See* Travis Decl. ¶ 33.  They did not search their agency email accounts for

emails exchanged with Dr. Schmidt's NASA email account.  *See id.*  However, this was

reasonable because the agency's search of Dr. Schmidt's computer was likely to uncover the

same emails that would have been located by searching the email accounts of Dr. Schmidt's

colleagues.  Moreover, CEI specifically limited its 2008 request to email or other correspondence

sent or received by Dr. Schmidt and did not seek email sent or received by his colleagues.

"When a request does not specify the locations in which an agency should search, the agency has

discretion to confine its inquiry . . . if additional searches are unlikely to produce any marginal

return."  *Campbell*, 164 F.3d at 28.  The record does not support CEI's argument that a search of

other employees' computers is likely to produce "any marginal return."  *Id.*

Third, CEI argues that the agency should have searched personal electronic devices for

responsive emails, but fails to support this with any evidence in the record indicating that Dr.

Schmidt used a personal electronic device for agency work.  Opp. at 38-39.  This is mere

speculation on CEI's part.  Moreover, "the issue to be resolved is not whether there might exist

any other documents possibly responsive to the request, but rather whether the *search* for those

documents was *adequate.*"  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir.

1984).

Finally, CEI argues that the search was unreasonable because NASA did not explain how

Dr. Schmidt preserves his emails and NASA did not provide "any guarantees that Dr. Schmidt

actually backs up his emails."  Opp. at 34.  However, the issue is whether NASA adequately

searched for emails in existence, not whether it searched all emails that ever existed.

**10.  The search was adequate even though it failed to produce a responsive document**

CEI argues that NASA's search is inadequate because it failed to produce a document known to exist.  Opp. at 39.  The document is an email from Dr. Schmidt to another GISS employee that was released as part of "ClimateGate," when many private, climate science related emails were released to the public.  *See id.*; *see also* Compl., Ex. 64 to Ex. F at 1-3.  The email does not include the email addresses, so it is not clear that NASA's search should have produced this document.  But even assuming that NASA's search should have located this record, "a search is not unreasonable simply because it fails to produce all relevant material."  *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986).  Indeed, "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

**11, 12, 13, 14.  The search for Dr. Schmidt's @columbia.edu emails was adequate**

CEI makes four arguments concerning the adequacy of NASA's search for emails exchanged between Dr. Schmidt's @columbia.edu account and the accounts of his NASA colleagues.  First, CEI argues that this search was insufficient because employees were not asked to confirm that they indeed performed the search.  This argument is rendered moot by the agency's supplemental declaration, which clarifies that the agency sent out a follow-up email to GISS employees asking them to confirm receipt of the initial request to search their email accounts, to confirm that they had indeed performed the search, and to confirm that they did not locate any responsive records.  Travis Supp. Decl. ¶ 9.  The agency did not receive any responses indicating that additional responsive records had been located.  *Id.*

Second, CEI points out that the declarations do not explain why GISS employees searched only for emails <u>from</u> Dr. Schmidt's @columbia.edu email account, not <u>to</u> this account.

Opp. at 38. Nevertheless, Dr. Schmidt searched his own @columbia.edu account for emails sent to or from federal personnel, which covered the gap in the GISS employees' search. *See* Travis Decl. ¶ 34.

Third, CEI contends that the declarations do not explain the search terms used by Dr. Schmidt in conducting the search of his @columbia.edu account. But it can be inferred from the nearby sentences in the declaration that when the agency states that Dr. Schmidt searched for "responsive emails," *see* Travis Decl. ¶ 34, this means emails "that contained one or more of the four terms identified in the FOIA Request." *Id.* ¶ 33.

Fourth, CEI claims the search was unreasonable because Dr. Schmidt's search of his @columbia.edu account was "unsupervised and unreviewed." Opp. at 38. However, while Dr. Schmidt's search was not reviewed or observed by an agency official, all of the responsive emails were provided to the legal office for review. Travis Decl. ¶ 34. CEI has not set forth any facts that suggest that this review by the legal office was not sufficient. In addition, Dr. Schmidt was not even required to search his @columbia.edu email account, because as the court has found, emails located only on the @columbia.edu domain are not agency records. *See supra* part III.B.2.

## 15, 16. CEI is not entitled to discovery or a protective order

CEI argues that it is entitled to discovery because of NASA's bad faith. CEI requests discovery on a variety of issues, including potential spoliation. Opp. at 41. CEI argues that NASA's delay in notifying Dr. Schmidt of the 2008 request means there is a "substantial probability" that Dr. Schmidt deleted responsive emails after CEI filed its request. *Id.* at 34-35.

Requests to compel discovery are generally not granted in FOIA cases. *See People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 308 (D.D.C. 2007) ("FOIA actions

typically do not involve discovery.").  "Where an agency's declarations are deficient, courts generally will request that an agency supplement its supporting declarations rather than order discovery."  *Wolf v. CIA*, 569 F. Supp. 2d 1, 10 (D.D.C. 2008) (internal quotation marks and citation omitted).

CEI's request for discovery is not justified here because CEI has not provided any evidence that the agency acted in bad faith and the outstanding issues of fact do not suggest bad faith on the part of NASA.  *See Landmark Legal Found. v. EPA*, 2013 WL 4083285, at *8 (permitting limited discovery where the two remaining issues of fact "may indicate bad faith on the part of the agency.").  The court has already explained that the agency's delay here does not raise a sufficient question as to the whether the agency acted in good faith.  As to CEI's speculations about spoliation, it is not spoliation if Dr. Schmidt deleted emails before he had notice of the 2008 request, because his obligation to preserve emails arose only once he anticipated litigation.  *See Smith v. Cafe Asia*, 246 F.R.D. 19, 21 n.1 (D.D.C. 2007) ("A party is obliged to preserve potentially relevant evidence once he anticipates litigation.").  Moreover, Plaintiff's "speculative claims" about spoliation are not sufficient to rebut the presumption of good faith accorded to agency affidavits.  *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

CEI also requests that the court order NASA to conduct a search for all documents responsive to request 08-040 subject to a protective order that would allow CEI's counsel to review all materials.  Opp. at 41.  The court finds that a protective order is not warranted here.

## V.    CONCLUSION

For all of these reasons, the court grants in part and denies in part the agency's motion for summary judgment.  NASA is required to produce responsive documents on the "Steve"

directory or file a *Vaughn* index asserting FOIA exemptions. NASA is also directed to search

for and produce emails on the NASA email domain exchanged with Dr. Schmidt's

@realclimate.org account that are responsive to Request 08-040. NASA's motion for summary

judgment is otherwise granted. A separate order will issue.


October 30, 2013


_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE